**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-03154-STV

RUBY JEAN BILLS,

     Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

     This matter is before the Court on Plaintiff Ruby Bills's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits ("SSI") under Title XVI of the SSA, 42 U.S.C. § 1381 *et seq.*[2] [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment,

---

[1] Carolyn W. Colvin is the named Defendant in the Complaint as she was the Commissioner of Social Security at the time the Complaint was filed. [#1] Nancy A. Berryhill currently serves as the Acting Commissioner of Social Security. [#15 at 1 n.1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, as Commissioner Colvin's successor, "is automatically substituted as a party." *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2] Various documents in the administrative record, including Plaintiff's initial DIB and SSI Applications, refer to Plaintiff by her married name, Ruby Jean Bills Lefear. [*See, e.g.*, AR 206-219] Plaintiff has legally divorced her husband and no longer uses her married name. [AR 42-43]

pursuant to 28 U.S.C. 636(c) and D.C.COLO.LCivR 72.2.   [#12]   The Court has

jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3).   This Court has carefully considered the Complaint [#1], the Social

Security Administrative Record [#10], the parties' briefing [#14, 15], and the applicable

case law, and has determined that oral argument would not materially assist in the

disposition of this appeal.   For the following reasons, the Court **AFFIRMS** the

Commissioner's decision.

## I.    LEGAL STANDARD

### A.    Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."[3]   42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).   "This

twelve-month duration requirement applies to the claimant's inability to engage in any

substantial gainful activity, and not just his underlying impairment."   *Lax*, 489 F.3d at

1084.   "In determining whether an individual's physical or mental impairment or

impairments are of a sufficient medical severity that such impairment or impairments

could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined

effect of all of the individual's impairments without regard to whether any such

---

[3] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[4]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any;[5]

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy. *Wells v.*

---

[4] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[5] Past relevant work is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1); 416.960(b)(1); *see also* 20 C.F.R. §§ 404.1565(a); 416.965(a).

*Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084.  "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis."  *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

     **B.**    **Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence."  *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)).  "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards."  *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'"  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation

omitted).  The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Hackett*, 395 F.3d at 1172.

## II.    BACKGROUND

Plaintiff was born in 1959.  [AR 206, 210][6]  Plaintiff completed high school and took a year and a half of college courses but did not complete any certificate or advanced degree.  [AR 497]  Plaintiff is able to communicate in English.  [*See generally* AR 40-60, 490-518]  Plaintiff protectively filed an application for SSI and an application for DIB, both dated August 1, 2011.  [AR 206-219]  In both applications, Plaintiff claimed a disability onset date of January 14, 2011 [AR 206, 210], but Plaintiff subsequently amended the alleged onset date to May 19, 2010 [AR 291, 460, 494].  Plaintiff claims disability based upon physical and mental impairments, including, but not limited to, anxiety, obesity, scoliosis, asthma/chronic obstructive pulmonary disease ("COPD"), and gastroesophageal reflux disease ("GERD").  [*See* #14 at 11-14; AR 463-468] Plaintiff's most recent prior work experience includes various short-term assignments through a temporary staffing agency and full time employment at Conoco from 1999 to 2004.  [AR 288, 498-499]

### A.    Medical Background

The Court offers a brief summary of the Plaintiff's medical history here and elaborates as necessary in its analysis.

Plaintiff testified that she was diagnosed with asthma in 1990 at the age of 30.  [AR 51, 501]  Plaintiff's medical records from 2010 through 2011 reflect that, although Plaintiff reported that her asthma caused her to awaken in the middle of the night, the

---

[6]  All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.  [#10]

asthma was stable to well-controlled. [*See, e.g.*, AR 395-415] For example, during a May 2011 doctor's visit, Plaintiff reported that her asthma was "doing well except with occasional nighttime awakening." [AR 340] At an August 2012 doctor's visit, an Asthma Control Test indicated that Plaintiff's asthma was "very poorly controlled." [AR 437] In October 2012, Plaintiff's doctor assessed her asthma as "well-controlled" with medication. [AR 374] At the hearing in March 2013, Plaintiff testified that her asthma was flaring approximately twice a day, brought on by exposure to smells, dirt and dust. [AR 51-52] At a December 2013 doctor's appointment, Plaintiff reported that, despite being off her asthma medication for over two weeks, she did not experience any worsening symptoms, asthma exacerbations, or nocturnal awakenings. [AR 794] The doctor noted that Plaintiff's spirometry demonstrated stable airflow but reflected an obstructive airflow pattern consistent with both asthma and COPD. [AR 796] During a February 2015 doctor's visit, Plaintiff reported minimal rescue inhaler use and no emergency room visits, but noted that the asthma was worse in cold conditions and that she had used the rescue inhaler once while walking in the cold to take the bus that morning. [AR 774] At the 2016 hearing, Plaintiff testified that her asthma flared mostly during her sleep, causing her to wake up at least once every night. [AR 501] Plaintiff takes medication for her asthma, which she testified was helpful. [AR 52, 501-502]

In November 2009, Plaintiff sought treatment for back pain, informing the doctor that she had a history of scoliosis for which she had taken muscle relaxants with no significant improvement in symptoms. [AR 314] A comparison of x-rays taken in November 2009 showed "stable convex left curvature of the cervicothoracic spine

without focal vertebral body abnormality." [AR 325] In August 2012, Plaintiff reported continued back pain as a result of the scoliosis to her doctor. [AR 437]

Plaintiff's medical records dating back to at least 2009 reflect issues with heartburn and a diagnosis of GERD. [AR 317, 414] Records from 2010 and 2011 reflect that the GERD was "well-controlled" on medication. [AR 340; *see also* AR 395-415] In October 2012, Plaintiff reported more frequent episodes of heartburn and acid reflux to her doctor. [AR 373-374] In August 2013, Plaintiff had laproscopic surgery to remove her gallbladder. [AR 764-766] At the 2016 hearing, Plaintiff testified that, as a side effect of the surgery, bile backs up in her stomach, triggering acid reflux and causing her stomach to "burn like it's on fire." [AR 500] Plaintiff testified that she experiences this daily. [*Id.*] Although Plaintiff takes multiple medications for this condition, she testified that they were not effective. [*Id.*] At a December 2013 doctor's appointment, Plaintiff denied indigestion, heartburn or reflux and noted that she had been off of her GERD medication "secondary to insurance issues." [AR 795] In August 2014, Plaintiff saw her doctor for a burning-type discomfort that could reach 10 out of 10 on an intensity scale and last up to 24 hours, which the doctor described as atypical for GERD symptoms. [AR 781-782] In November 2014, Plaintiff reported that she had been doing well until her GERD symptoms returned a month ago. [AR 778] A December 2014 CT scan of Plaintiff's abdomen and pelvis suggested an incomplete bowel rotation without obstruction. [AR 826-827] During a February 2015 doctor's visit, Plaintiff reported that her medication was not controlling her reflux and that she experienced daily continuous burning sensation. [AR 774] A July 2015 CT scan of Plaintiff's abdomen showed marked dilation of the duodenum and a small anterior

abdominal wall hernia containing small intestine. [AR 717] Plaintiff reported abdominal pain and a burning sensation to her doctors throughout 2015 and 2016. [*See, e.g.*, AR 704-725, 770-773]

With regard to Plaintiff's mental health, notes from a November 2009 therapy session indicate a diagnosis of bipolar disorder not otherwise specified by history and depressive symptoms. [AR 313] Notes from a July 6, 2010 therapy session reflect that Plaintiff had generalized anxiety disorder and ADHD by history. [AR 354] During a September 2011 psychological consultative examination, Plaintiff told the examiner that she had been diagnosed with ADHD 17 years ago by her son's psychiatrist, but she never had a formal evaluation for it. [AR 364] Plaintiff also told the examiner that she had been seeing a therapist for five or six years, in part, related to possible depression. [AR 363] The consultative examiner's diagnostic impression was that Plaintiff had major depressive disorder, recurrent, moderate and anxiety disorder, not otherwise specified. [AR 366] In December 2012, Plaintiff sought medical treatment for insomnia and was diagnosed with psychophysiological insomnia with episodic daytime somnolence. [AR 382-386] Plaintiff also testified that she has had problems with anxiety since high school, but does not go to therapy or take medication for the condition. [AR 502-503] Plaintiff testified that she has problems concentrating and cannot watch an entire television program, but that she does not have problems understanding information or making decisions. [AR 504-505] At the 2013 hearing Plaintiff testified that she did not have a problem getting along with other people [AR 56], but at the 2016 hearing, Plaintiff testified that people agitate her and thus she has problems getting along with other people [AR 505].

## B.    Procedural History

Plaintiff's applications for DBI and SSI were both initially denied on October 13, 2011.  [AR 66, 79]   On December 9, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR 137]   A hearing was conducted before ALJ Patricia E. Hartman on March 13, 2013, at which Plaintiff and vocational expert Ashley Bryars both testified.  [AR 40-41, 187-188]   Plaintiff was represented at the hearing by an attorney, Will Viner.  [AR 40]   On April 1, 2013, the ALJ issued a decision denying Plaintiff benefits.  [AR 25-34]   Plaintiff timely requested a review of that decision by the Appeals Council, which denied her request for review on October 10, 2014.  [AR 1-4]   Plaintiff timely filed an appeal in the United States District Court for the District of Colorado, *Bills v. Colvin*, No. 14-cv-03354-KLM (D. Colo. Dec. 11, 2014).  On March 21, 2016, Magistrate Judge Kristen L. Mix issued an order reversing the decision of the Commissioner that Plaintiff was not disabled based upon the ALJ's failure to address certain medical opinion evidence in the record and remanded the matter for further proceedings.  *Bills v. Colvin*, No. 14-cv-03354-KLM, 2016 WL 1084373, at *6-7 (D. Colo. Mar. 21, 2016).  Pursuant to Magistrate Judge Mix's Order, on March 29, 2016, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings consistent with the Court's Order.  [AR 556]

On July 28, 2016, ALJ Patricia E. Hartman conducted a further hearing on Plaintiff's Applications, at which Plaintiff and vocational expert Pat Pauline both testified. [AR 491-492, 702-703]  Plaintiff was represented at the hearing by an attorney, Brandon M. Silinski.  [AR 492]  On November 16, 2016, the ALJ issued a decision again denying Plaintiff benefits.   [AR 460-483]   Plaintiff timely filed an appeal with this Court on

December 22, 2016.  [#1; *see* #15 at 2 n.2]   Because Plaintiff did not file written objections with the Appeals Council and the Appeals Council did not otherwise assume jurisdiction of the case,[7] the ALJ's decision is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.984, 416.1484.

## C.   The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB and SSI after evaluating the evidence pursuant to the five-step sequential evaluation process.  [AR 462-483]  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 19, 2010, the alleged onset date.[8]  [AR 460-463]  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity, scoliosis, asthma/COPD, and GERD.  [AR 463]  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations.  [AR 468-470]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform light work with the following limitations:[9]

---

[7] Although Plaintiff contends in her opening brief that she "filed exceptions to the ALJ's decision," no such objections appear in the Administrative Record and Plaintiff fails to reference any order of the Appeals Council addressing those exceptions.  [#14 at 7] Defendant asserts that no such exceptions were filed, but concedes that the appeal was timely filed with this Court.  [#15 at 2 n.2]

[8] Although Plaintiff engaged in some work activity in 2010 and 2011 subsequent to the alleged onset date, her earnings from those jobs were below the level of substantial gainful activity.  [AR 223, 462-463]

[9] "Light work" is defined in the regulations as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" or, even if it only requires lifting very little weight, "a job . . . [that] requires a good deal of walking or standing, or [ ] involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).  The Social Security Administration has further instructed that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires

[Plaintiff] can occasionally reach overhead, climb ramps and stairs, stoop, kneel, crouch, and crawl. She cannot climb ladders and scaffolds or work at unprotected heights or with dangerous, unprotected machinery. She cannot work with concentrated pulmonary irritants. She can perform simple, routine, and repetitive work.

[AR 470] The ALJ provided a narrative setting forth the relevant evidence considered in determining the RFC and explaining the weight given to each of the medical opinions in the record. [AR 463-468, 470-481]

At step four, the ALJ concurred with the vocational expert's testimony that (1) plaintiff had past relevant work as cashier II, as defined in the Dictionary of Occupational Titles ("DOT"); and (2) Plaintiff remains capable of performing this job both as she actually performed it and as it generally is performed in the national economy. [AR 482] Accordingly, the ALJ determined that Plaintiff was not under a disability from May 19, 2010 (the alleged onset date) through November 16, 2016 (the date of the ALJ's decision), and did not proceed to step five. [*Id.*]

## III.   ANALYSIS

Plaintiff raises two challenges to the ALJ's decision on appeal. First, Plaintiff contends that the ALJ's finding that Plaintiff had the RFC to perform light work with certain additional postural and environmental restrictions is not supported by substantial evidence. [#14 at 30-34] Second, Plaintiff argues that the ALJ's determination that Plaintiff could perform past relevant work as cashier II is not based upon substantial evidence. [*Id.* at 35-37]

---

standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83–10, 1983 WL 31251, *6 (1983).

## A. The ALJ's RFC Determination

In assessing Plaintiff's RFC, the ALJ determined that Plaintiff could perform light work with certain postural and environmental restrictions. [AR 470] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition, Social Security Ruling 83–10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, *6. Plaintiff contends that the ALJ's determination that she could perform light work without placing additional limitations on the amount of weight she could lift or the amount of time she could stand was not supported by substantial evidence, because it is contradictory to the opinion testimony offered by consulting physician, Dr. Linda Mitchell, and treating gastroenterologist, Dr. Aaron Burrows. [#14 at 31-34] Dr. Mitchell opined that Plaintiff could only stand or walk for four hours out of an eight hour workday and recommended that Plaintiff only occasionally be required to bend, squat, crouch or stoop. [AR 330] Dr. Burrows opined that Plaintiff could continuously sit for only fifteen minutes before she would need to stand and then would need to lie down and opined that Plaintiff could never lift 10 pounds or more and could lift less than 10 pounds only rarely. [AR 836-839]

Plaintiff appears to argue that the ALJ's RFC determination must find direct support in the medical opinion evidence. [*See* #14 at 32 (arguing that "an ALJ may not make medical judgments without medical evidence to support his determination")] A claimant's RFC, however, is an administrative, not medical, finding that is reserved to the Commissioner. Social Security Ruling 96-5p, 1996 WL 374183, at *2 (1996); *see*

*also* 20 C.F.R. §§ 404.1545, 416.945**.** "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The Tenth Circuit thus has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALF can determine RFC within that category." *Id.* at 1288-89 (quotation omitted).

Moreover, Plaintiff's contention that the functional limitations proposed by Dr. Mitchell—that Plaintiff be limited to standing and walking no more than four hours in an eight-hour workday—are "uncontroverted in the record" is mistaken. [#14 at 31] Dr. Burrows opined that Plaintiff could sit and stand/walk for at least six hours in an eight-hour workday. [AR 837] Dr. Judy Panek, a non-examining medical expert who offered her opinion after reviewing Plaintiff's medical records, also opined that Plaintiff had the RFC for light work, which, as indicated above, generally requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. [AR 371] Similarly, although Dr. Burrows testified that Plaintiff should be limited to lifting less than 10 pounds, neither Dr. Mitchell nor Dr. Panek recommended a limitation on lifting inconsistent with light work. [*Compare* AR 839 *with* AR 330, 371] Plaintiff's citation to *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004), for the proposition that "the ALJ may not pick and choose which aspects of an *uncontradicted* medical opinion to believe" thus is inapplicable as the medical opinions here clearly were contradicted by other medical opinions in the record. [#14 at 32 (emphasis added)] Instead, faced with conflicting medical opinions, the ALJ "arrived at an assessment between the [ ] medical

opinions without fully embracing [any] one" of them.  *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016).  The Tenth Circuit has expressly upheld this approach.  *Id.*

Although the RFC need not directly correspond to a medical opinion, "[t]he RFC assessment must always consider and address medical source opinions," and, if the RFC assessment conflicts with a medical-source opinion, the ALJ must explain why the opinion was not adopted.  Social Security Ruling 96-8P, 1996 WL 374184, at *7 (1996).  The ALJ must be "explicit as to the medical providers [s]he relied on in assessing Plaintiff's RFC and the reasons [s]he relied on their opinion."  *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1249 (D. Colo. 2009).  The crux of Plaintiff's argument thus is that the ALJ failed to attribute the appropriate weight to the opinions of Dr. Mitchell and Dr. Burrows.

The regulations governing the Commissioner's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians.  *Boyd v. Berryhill*, No. 17-CV-00722-MEH, 2017 WL 4877213, at *11 (D. Colo. Oct. 30, 2017); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  In appropriate circumstances, however, opinions from agency physicians and consultants who have never seen the claimant, "may be entitled to greater weight than the opinions of treating or examining sources."  Social Security Ruling 96-6p, 1996 WL 374180, at *3 (1996); *see Wade v. Colvin*, 26 F. Supp. 3d 1073, 1082 (D. Colo. 2014).

Regardless of its source, the ALJ is required to evaluate every medical opinion and "discuss the weight he assigns to such opinions."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  In conducting this evaluation, the ALJ considers the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).  "Although an ALJ need not recite and assess each one of [these] six factors with respect to every opinion in the record, the ALJ 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Nurre v. Colvin*, No. 16-cv-01262-RBJ, 2017 WL 2333098, at *3 (D. Colo. May 30, 2017) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Here, the ALJ's decision accurately summarizes the opinions of Dr. Mitchell and Dr. Burrows and provides a narrative explanation for the ALJ's decision to afford "limited weight" to the medical opinion of Dr. Mitchell and "only partial weight" to the opinion offered by Dr. Burrows.  [AR 480-481]  In particular, the ALJ explained that Dr. Mitchell's opinion that Plaintiff could stand or walk for only four hours in an eight-hour workday was inconsistent with Dr. Mitchell's observations during the consultative examination that Plaintiff had only a mildly antalgic gait, sat comfortably during the examination without pain-mitigating movements, did not appear uncomfortable getting on and off the examination table or removing her shoes, arose spontaneously and unaided from a

seated position without discernible discomfort, could stand on her heels and toes, had no discernible discomfort with normal ranges of motion of her cervical and dorsolumbar spine, and had full strength in all extremities. [AR 480; *see* AR 326-330] Plaintiff does not dispute these facts, but rather argues that they also could be interpreted to be consistent with the limitations proposed by Dr. Mitchell. [#14 at 33] In essence, Plaintiff asks this Court to reweigh the evidence considered by the ALJ to reach a different conclusion. The Court, however, is prohibited from doing so. *See Lax*, 489 F.3d at 1084 (finding that the Court "may not displace the [Commissioner's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" (internal quotation omitted)).

Moreover, the ALJ's decision to accord "little weight" to Dr. Mitchell's opinion was not based only upon the perceived inconsistencies with Dr. Mitchell's own observations. Instead, the ALJ observed that Dr. Mitchell's opinion also was not consistent with subsequent treatment notes showing that Plaintiff walked normally or with Plaintiff's own statement to her treating physician that she walked the places she went most of the time and got good exercise. [AR 481 (citing AR 383, 711-712)] As noted above, Dr. Mitchell's opinion also was inconsistent with the opinions offered by Dr. Burrows and Dr. Panek. The ALJ further noted that Dr. Mitchell had examined Plaintiff on only one occasion and thus lacked a longitudinal treatment history with the claimant. [AR 481] Plaintiff argues that the ALJ's decision to discount Dr. Mitchell's opinion because she did not have a longitudinal treatment history with the Plaintiff "smacks of 'picking and choosing,' because the ALJ gave great weight to the opinion of Dr. Panek . . . despite the fact that she never examined [Plaintiff] at all." [#14 at 33] Plaintiff's argument is

contrary to the law. As noted above, one of the factors the ALJ is *required* to consider in determining the proper weight to accord to a medical opinion is the "[n]ature and extent of the treatment relationship." 20 C.F.R. §§ 404.1527(c), 416.927(c). To the extent Plaintiff is arguing that the opinion of a non-examining expert can never be accorded more weight than that of a consulting expert, she is incorrect. *See, e.g.,* Social Security Ruling 96-6p, 1996 WL 374180, at *3 (1996); *Wade*, 26 F. Supp. 3d at 1082. The lack of a longitudinal treatment history was only one of several reasons offered by the ALJ for according less than full weight to Dr. Mitchell's opinion and there is no indication in the record that the ALJ attributed inappropriate weight to that factor.

With regard to Dr. Burrows's opinion, the ALJ explained that the opinion was not consistent with the record as a whole. [AR 480] The ALJ observed that the exertional limits proposed by Dr. Burrows—that Plaintiff could walk only two blocks, could sit for only fifteen minutes at a time before needing to stand and then needing to lie down, and could lift and carry only less than ten pounds—are not consistent with Dr. Burrows's own treatment notes indicating that Plaintiff walked normally, had normal motor strength and tone, did not have musculoskeletal tenderness, and had normal movement in all extremities. [*Id.* (citing 711-712)] The ALJ also noted that the basis for Plaintiff's treatment with Dr. Burrows (epigastric pain) is not the cause for the proposed limitations proposed by Dr. Burrows. [*Id.*] The ALJ further explained that none of the medical evidence supported Dr. Burrows's opinion that Plaintiff would require nine restroom breaks during an eight-hour workday. [*Id.*] The ALJ also pointed out the inconsistency among Dr. Burrows's statement that he sees the Plaintiff only once a year, Plaintiff's testimony that she treated with Dr. Burrows approximately once a month, and the

treatment notes which suggest treatment more than once a year but less than monthly. [*Id.*; *see* AR 500, 704-725, 836]  Finally, the ALJ noted that Plaintiff appeared to have begun seeing Dr. Burrows in mid-2015 and thus lacked a longitudinal treatment history with Plaintiff.  [*Id.*]

Plaintiff argues that "Dr. Burrows saw [Plaintiff] at least four times in less than a year, certainly enough to establish a 'longitudinal history.'"  [#14 at 34]  The Court disagrees that a treatment history spanning less than a year necessarily establishes a "longitudinal history," particularly in the context of this case, where Plaintiff alleges an onset date of May 19, 2010 but did not begin treatment with Dr. Burrows until mid-2015. The Court declines Plaintiff's invitation to reweigh the evidence and reach a different result with regard to whether Dr. Burrows had established a longitudinal treatment history with Plaintiff.

Plaintiff also argues that "the situation here is remarkably similar to the one in *Chapo* because Dr. Burrows' opinion regarding the amount of weight [Plaintiff] can lift is uncontroverted in the medical record, and therefore the weight the ALJ gave it appears to be more a result of picking and choosing then the application of reasonable criteria for evaluation."  [#14 at 34]  As an initial matter, as explained above, Plaintiff's contention that Dr. Burrows's opinion was uncontroverted is inaccurate.  Dr. Panek opined that Plaintiff maintained the RFC to perform light work [AR 371], which, by definition, includes lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, 20 C.F.R. §§ 404.1567(b), 416.967(b). Moreover, in *Chapo*, the Tenth Circuit emphasized that not only was the medical opinion at issue uncontroverted, but the opinion also had not been found to be

"inconsistent with [the expert's] associated examination and report or with other evidence identified from the record." *Chapo*, 682 F.3d at 1291. Here, by contrast, the ALJ expressly found that Dr. Burrows's opinion was inconsistent with both Dr. Burrows's own treatment notes and with the record as a whole. [AR 480] Plaintiff does not challenge those findings.

The Court thus finds that the ALJ applied the correct legal standards in evaluating the relative weight to accord the medical opinion evidence and that the weight accorded those opinions is supported by substantial evidence.

**B.    The ALJ's Determination That Plaintiff Can Perform Past Relevant Work**

Plaintiff contends that the ALJ's determination that Plaintiff could perform past relevant work as a cashier II is not supported by substantial evidence. [#14 at 35-37] Plaintiff's argument is premised entirely upon inconsistencies between the ALJ's 2013 decision and 2016 decision regarding Plaintiff's past relevant work. In the 2013 decision, the ALJ found that Plaintiff had past relevant work as a car jockey, general houseworker, machine cellophane wrapper, security guard, dishwasher, industrial cleaner/sweeper, hand packager, and, as relevant here, cashier/stocker/storekeeper. [AR 32] The 2013 opinion described the cashier/stocker/storekeeper as follows: "DOT #290.477-014, svp3 (semi-skilled),[10] light exertion."[11]    [AR 32]    The ALJ's 2016

---

[10] The Specific Vocational Preparation of "SVP" is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* (4th Ed., 1991), App'x C at 1009. An SVP of 3 means that the job requires over one month up to and including three months of lapsed time. *Id.* An SVP of 2 means that the job requires more than a short demonstration up to and including one month of lapsed time. *Id.*

[11]    Plaintiff contends that the 2013 decision "found that [Plaintiff's] past work at Conoco was that of a cashier/stocker/storekeeper, was classified in the DOT as #290.477-014, and had an exertion level of medium and was semiskilled with an SVP level of 3, which

decision, however, addressed only Plaintiff's past relevant work as a cashier at Conoco and classified that position as "cashier II (DOT # 211.462-010), . . . , considered a light exertional level, unskilled occupation with a SVP of 2." [AR 482] Plaintiff argues that the ALJ erred by transforming the same position from one that required specific skills and medium exertion in the 2013 decision to one that was unskilled and required only light exertion in the 2016 decision without offering any explanation for the change. [#14 at 36] Although Plaintiff accuses the ALJ of "manipulating the evidence to support a predetermined finding of nondisability" [#14 at 36],[12] Plaintiff fails to argue—let alone provide factual support for this Court to conclude—that the 2013 determination was the correct one or that the 2016 classification of Plaintiff's work at Conoco as cashier II was unsupported by substantial evidence. Instead, Plaintiff argues only that the ALJ failed adequately to develop the factual record regarding Plaintiff's past relevant work. [*Id.* at 36-37]

---

were beyond [Plaintiff's] restrictions as set forth in both ALJ decisions." [#14 at 36] The basis for Plaintiff's contention that the cashier/stocker/storekeeper position had "an exertion level of medium" is unclear as both the 2013 decision and the vocational expert's testimony at the 2013 hearing describe the position as involving light exertion. [AR 32, 61] The DOT listing for #290.477-014 also describes that position as involving light work. *Dictionary of Occupational Titles* (4th Ed., 1991), at 231. Elsewhere in her brief, Plaintiff describes the position as "cashier/stocker/housekeeper" and identifies it as DOT #290.477-010 (which job is identified in the DOT as coupon-redemption clerk (retail trade), involving light exertion). [#14 at 35] Plaintiff thus appears to unintentionally conflate the separate cashier/stocker/storekeeper (DOT #290.477-014 involving light exertion) and general houseworker (DOT #301.474-010, involving medium exertion) jobs identified in the 2013 decision. [AR 32] The Court need not resolve this discrepancy, however, because the Court's resolution of Plaintiff's appeal would be the same regardless of whether the cashier/stocker/storekeeper position described in the 2013 decision involved medium or light exertion.

[12] Plaintiff herself acknowledges, however, that the ALJ did not make any specific inquiry of either Plaintiff or the vocational expert regarding the specific duties of Plaintiff's position at Conoco during the 2013 hearing, whereas, at the 2016 hearing, the ALJ "discussed this job with [Plaintiff] . . . to some extent." [#14 at 35] Plaintiff thus concedes that the ALJ had more and different information available to her when she categorized Plaintiff's past relevant work as that of cashier II in the 2016 decision.

The Commissioner's decision that a claimant has the capacity to perform past relevant work must contain specific findings of fact regarding (1) the claimant's RFC, (2) the physical and mental demands of the past relevant work, and (3) the claimant's ability to perform the past relevant work in light of her RFC. Social Security Ruling 82–62, 1982 WL 31386, at *4 (1982); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). Where, as here, the claimant is represented by counsel at the hearing, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). In the context of a determination of a claimant's past relevant work, the ALJ has a duty to fully investigate the physical and mental demands of the past work and compare them to the claimant's retained capabilities. *Henrie*, 13 F.3d at 361; *Winfrey*, 92 F.3d at 1024. Despite this duty to develop a record, however, the burden of proving disability remains with the claimant at step four. *Henrie*, 13 F.3d at 361. The claimant thus bears the burden of demonstrating she cannot return to her previous relevant work, either as she performed it or as it is performed in the national economy. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

Here, the ALJ agreed with the vocational expert's testimony at the 2016 hearing that Plaintiff's past work at Conoco was that of cashier II, as identified in the DOT. [AR 482, 519-520] In addition to relying upon the testimony of the vocational expert, the ALJ

also relied upon Plaintiff's own reports of work activity,[13] which the ALJ found to be consistent with the ALJ's finding that Plaintiff had past relevant work as cashier II.  [AR 482]  In addition, the ALJ asked Plaintiff specific questions about her position with Conoco at the hearing.  [AR 498-499]  Plaintiff identified the following work duties: "[c]heck in vendors, run the register, mop some floor, do coffee, pull trash, and reset the car wash."  [AR 498]  Plaintiff testified that the maximum amount of weight she had to lift or carry was "[m]aybe 10 pounds."  [AR 498-499]

On appeal, Plaintiff fails to offer any explanation for why this information was insufficient to support the ALJ's finding that Plaintiff's past relevant work was that of cashier II.  Social Security Ruling 82-62 expressly contemplates that "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  1982 WL 31386, at *3 (1982); *see also Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (finding ALJ's analysis of past relevant work sufficient where the ALJ obtained testimony from vocational expert regarding identification of the prior work "by job title, exertional level, skill level, and DOT code" (internal quotation omitted)); *Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002) (finding record regarding demands of past relevant work adequately developed where record included "inquiry at the hearing as well as an earlier description of that work by [claimant] herself").

---

[13] In the Disability Report, Plaintiff described her job title as "cashier."  [AR 254]  On the Work History Report, Plaintiff identified her title as "Lead Shift" and described the position as involving a variety of tasks including, making coffee, cleaning bathrooms and the car wash, checking in vendors, and stocking shelves.  [AR 259, 263]  On a Work Background form, Plaintiff described her duties as involving stocking, mopping, assisting vendors, cleaning and working the cash register.  [AR 288]

Nor does Plaintiff identify any additional facts—either in the current record or that the ALJ should have developed—inconsistent with the ALJ's finding that Plaintiff's past relevant work was that of cashier II. Plaintiff criticizes the ALJ for failing to ask the vocational expert about the specific demands of the position cashier II or to explain why she classified the position differently from the vocational expert at the 2013 hearing. [#14 at 35-36] Plaintiff fails to explain why further testimony from the vocational expert about the position was necessary given that the vocational expert testified that the job was consistent with the DOT listing, which provides additional information regarding the demands of the position. [AR 520] The Tenth Circuit has held that "[t]he ALJ may rely on the [DOT's] job description for claimant's job category as presumptively applicable to a claimant's prior work." *Andrade*, 985 F.2d at 1051 (internal quotation omitted). A claimant may overcome this presumption "by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Id.* at 1051-52 (quotation omitted). Put another way, Plaintiff "must show that the duties of [her] prior job were sufficiently distinct from the duties of a [cashier II] as described in the [DOT] to constitute a different line of work." *Id.* at 1052 (internal quotation omitted). Here, Plaintiff offers no evidence to support a finding that the duties associated with her prior position were distinct from that of cashier II, as defined in the DOT.

Moreover, although Plaintiff's counsel questioned the vocational expert at the hearing, he did not challenge her classification of the position as that of cashier II or ask any questions regarding the prior vocational expert's classification of the job as cashier/stocker/storekeeper (DOT #290.477-014). *See Hawkins*, 113 F.3d at 1167

(finding that "ALJ may ordinarily require counsel to identify the issue or issues requiring further development").

The Court thus finds that the ALJ's determination that Plaintiff retained the ability to perform her past relevant work as cashier II is supported by substantial evidence.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from May 19, 2010 through November 16, 2016.

DATED:  January 16, 2018           BY THE COURT:

                                          s/Scott T. Varholak
                                          United States Magistrate Judge